**ROBERTSON, Commissioner of Patents, v. COOPER.**

No. 3066.

Circuit Court of Appeals, Fourth Circuit.

Jan. 13, 1931.

NORTHCOTT, Circuit Judge.

This is a suit brought by appellee, Oswald Cooper, under section 4915 of the Revised Statutes (35 USCA § 63).

Cooper filed his application for a patent for a design for a font of type on May 23, 1923. The application was serially numbered Design 6262, and the type has been designated in this suit as Cooper Black. The application was rejected by the examiner. Appeal was taken to the Examiners in Chief, who reversed the examiner. The examiner made a further search and rejected the claim on additional art. Appeal was taken to the Examiners in Chief, who affirmed the rejection of the examiner, one member dissenting. Appeal was taken to the Commissioner. In this appeal the Assistant Commissioner affirmed the decision of the Examiners in Chief. Appeal was then taken to the Court of Appeals of the District of Columbia, in which appeal the court affirmed the decision of the Commissioner. The opinion of that court is reported in 57 App. D. C. 353, 23 F. (2d) 774, and pages 69 et seq. of this record. Cooper then brought this suit, and the bill, as originally filed, involved design application No. 6262 only. By supplemental bill plaintiff-appellee brought before the court his applications No. 6784 and No. 10,689. The court thereafter ruled that it was without jurisdiction to consider the two applications brought in by the supplemental bill and dismissed the supplemental bill.

The court below held in favor of the appellee and entered a decree authorizing appellant to issue a design patent to Cooper, from which decree this appeal was taken.

The main question involved was the patentability of a font of type called the Cooper Black. The Patent Office held that the design in question was not patentable because the same, or practically the same, design of type was known and used by others in this country, and was published prior to appellee's invention, and was published and in public use more than two years prior to the filing of appellee's application. The design of the font of type as filed with the Cooper application follows:

T. A. Hostetler, of Washington, D. C. (Charles B. Rugg, Asst. Atty. Gen., and J. F. Mothershead, of Washington, D. C., on the brief), for appellant.

A. Miller Belfield, of Chicago, Ill., and Semmes, Bowen & Semmes, of Baltimore, Md., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and McCLINTIC, District Judge.

ABCDEFGHIJKLMN
OPQRSTUVWXYZ&
abcdefghijklmnopqr
stuvwxyz
$1234567890.,';:?!-
‸[]¶£—

A number of designs of type claimed by the appellant to be similar were shown in the record, but the Commissioner relied principally upon the type used in the word "Asbestone," admittedly printed more than two years prior to the Cooper's application. The word as printed follows:

**Asbestone**

The judge below in his opinion, while admitting the great similarity in design as used in the word "Asbestone" and the design as used in the font of type upon which the application is based, apparently based his opinion upon the fact that there were comparatively a few letters in the word "Asbestone"; whereas, the application was for an entire font of type, and, therefore, could not be anticipated by the use of a few letters only. We cannot agree with this conclusion. It seems apparent to us that given even a few letters a skilled workman could construct an entire font of type of the same design, and that this, while it might involve a very high degree of skill, would not arise to the dignity of an invention. The English alphabet consists of fixed groups, such as the round letters c, e, o, C, G, O, Q, and the oblique line group, as A, V, W, X, Y, Z. Then we have the verticle line group, as E, F, H, I, L, T, i, l, m, n, r, u, and the vertical line group combined with a half loop, as B, D, P, R, b, d, p, q. Another combination is the vertical and oblique line group, as K, k, M, N.

It is apparent that the design of any one of these groups would suggest to a skilled workman the design of all the others of the same group, and such a workman, having before him the word "Asbestone," could, without any inventive ingenuity whatever, by exercise of a high degree of skill only, construct the entire font of patent, and it is also apparent that such a font of type, made with the word "Asbestone" used as a model, would differ in no material respect from the font of type upon which Cooper based his application for a patent.

In view of our conclusion as to the design in the word "Asbestone," we do not consider it necessary to discuss the numerous other very similar designs used in other words that were published before Cooper's application.

■ It has long been a settled rule of patent law that "that which infringes, if later, would anticipate, if earlier." Knapp v. Morss, 150 U. S. 221–228, 14 S. Ct. 81, 84, 37 L. Ed. 1059; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121.

It certainly cannot be contended that if the design of the font of type upon which Cooper based his application were patentable and had been patented, and thereafter the word "Asbestone" was being used, it would not be an infringement on the patent. The word "Asbestone" had a publication date of June 14, 1919, and the public had acquired the right to the use of this design before Cooper's application was made.

As was well stated in the able brief filed on behalf of the Commissioner: "A single design patent is granted for an entire font. on the theory that there is but one inventive idea running through the entire font. If, however, we take the position that one letter would not suggest the appearance of the other letter, then there should be a design patent for each letter, as the law contemplates that only one design may be covered by one patent."

■ There is some intimation in the record that the word "Asbestone" was Cooper's design; but his own publication, disclosing a design more than two years prior to filing an application for a patent, is a disclosure which precludes the grant of a valid patent thereon. King Ventilating Co. v. St. James (D. C.) 17 F.(2d) 615, affirmed (C. C. A.) 26 F. (2d) 357.

■ This court has held that while the judgment of Patent Office officials is not absolutely binding on the courts, it is entitled to great weight, and is to be overcome by clear proof of mistake. Gulf Smokeless Coal Co. et al. v. Sutton, Steele & Steele et al., 35 F.(2d) 433. This is obviously true, because the Patent Office has the equipment for deciding intricate and technical questions of this character, and its officials, whose conclusions are entitled to full faith and credit as the conclusions of government officials, have no interest or incentive other than to arrive at a right conclusion.

■ It has long been settled that the true test of identity of a design is the effect of the comparison between the designs upon an ordinary observer and not upon the one skilled in that particular art. As was said by the Supreme Court in the case of Gorham Mfg. Co. v. White, 14 Wall. 511, 527, 20 L. Ed. 731:

"No counterfeit bank note is so identical in appearance with the true that an experienced artist cannot discern a difference. It is said an engraver distinguishes impressions made by the same plate. Experts, therefore, are not the persons to be deceived."

See, also, Sagendorph v. Hughes (D. C.) 95 F. 478; Try-Me Beverage Co. v. Metropole (D. C.) 25 F.(2d) 138; Ashley v. Weeks-Numan (C. C. A.) 220 F. 899.

There is grave doubt whether Cooper's design, upon which he makes the application, is ornamental so as to bring it within the statute which says that in order to be patentable it must be not only useful but also ornamental (Cooper v. Commissioner [D. C.] 38 F.(2d) 852), but in view of our conclusions as above stated we do not consider it necessary to discuss that point.

It is contended on behalf of the appellee that no appeal lies from a decision in his favor in a suit of this character. We cannot agree to this contention, as appeals of this character have been considered by appellate courts, and by this court in Robertson v. General Electric Co., 32 F.(2d) 495. It is also contended on behalf of the appellee that because this appeal is being prosecuted by the Department of Justice and not by the Patent Office, the Commissioner of patents is the nominal appellant and not the real party in interest. With this we cannot agree, as it is clearly apparent that the Department of Justice is the proper agent through which the appeal should be prosecuted.

A question is raised as to allowance for the traveling expenses incurred by counsel for the Commissioner in attending to the taking of depositions on behalf of the plaintiff in California. The time and place of the taking of the depositions was fixed and notice given the Patent Office, by appellee, and the Commissioner thought it advisable to have some one present who was familiar with Patent Office procedure. An attorney was sent from Washington to attend the taking of the depositions. The language of the statute (section 4915, supra) is as follows:

"In all cases, where there is no opposing party, a copy of the bill shall be served on the commissioner; and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not."

The judge below, seemingly upon the ground that the allowance of expenses might lead to serious abuses, refused to pay the expenses of the attorney to California, and held that the word "expenses" in the statute practically meant "costs." We cannot concur in this conclusion. The evident intention of Congress in the use of the word "expenses" was to include more than that which is ordinarily included in the word "costs." The ap-

plicant fixed the time and place of the taking of the depositions, the government was clearly entitled to be represented by some one familiar with patent office procedure, and the allowance should have been made by the learned judge below. The courts may be relied upon to prevent any abuse of this interpretation· of the statute, which is, to our minds, clearly what Congress intended when it used the word "expenses."

Having in mind that tender consideration which should be given always to inventive genius, we are nevertheless forced to the conclusion that the action of the trial judge was erroneous. The decree of the court below is reversed, and the case remanded with instruction to enter a decree dismissing the bill for want of equity.

Reversed and remanded.