24 C.C.P.A.(Patents)

## In re CRECELIUS.

### Patent Appeal No. 3668.

Court of Customs and Patent Appeals.
Nov. 30, 1936.

Kwis, Hudson & Kent, of Cleveland, Ohio, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting claims numbered 34 to 37, inclusive, 40 to 45, inclusive, and 55 of appellant's application for patent. All of the claims on appeal were rejected upon cited prior art; certain claims have been allowed.

Both process and article claims are involved. Claims 34, 35, 36, 37, 40, 41, and 55 are illustrative and read as follows:

"34. A composition of matter comprising a chloride which upon heating decomposes below the fusion temperature of iron sulphide, together with an inorganic oxidizing agent and an oxidation catalyst of the type of manganese dioxide.

"35. A composition of matter comprising a chloride which upon heating decomposes below the fusion temperature of iron sulphide, together with an oxidation catalyst of the type of manganese dioxide and an oxidizing agent which acts as a promoter catalyst.

"36. A composition of matter comprising a deliquescent chloride, potassium dichromate and tannic acid.

"37. A composition of matter for the treatment of coal comprising calcium chloride and materials which form a protecting coating for the calcium chloride when the same is coated upon the coal."

"40. The method of treating coal for the purposes described, which consists in applying to the coal a composition containing a chloride which upon heating decomposes at a temperature below the fusion point of iron sulphide, together with catalytic material whereby by chemical action there is provided a continued supply of chlorine (during the burning of the coal) to effect substantial decomposition of the iron sulfur compounds to form a stable oxide of iron and a stable oxide of sulfur.

"41. The method of treating coal which consists in applying to the coal a composition containing a deliquescent chloride together with a substance containing chromium oxide and tannic acid."

"55. As an article of commerce, coal upon which there has been deposited a mixture of a deliquescent chloride together with catalytic material and a substance which fixes the chloride and catalytic material upon the coal."

The references cited are: Nock, 28,543, May 29, 1860; Livingstone, 708,774, September 9, 1902; Stoner, 887,145, May 12, 1908; Fingerland et al. (Ger.), 270,573, February 19, 1914; Foxwell, 1,183,445, May 16, 1916; Esselen, Jr., et al., 1,688,695, October 23, 1928; Komarek, 1,860,465, May 31, 1932; Treatise of Inorganic Chem., Mellor, vol. 2, pp. 25–35.

The alleged invention is concisely described by the Board of Appeals in its decision as follows: "The invention relates to the treatment of coal containing sulfur and particularly to coals containing the lower sulphides of iron. When coal containing these sulphides is burned, the sulphides melt at approximately 2140° F., run down into the grates, fuse to the grate bars, and obstruct the passage of air. Some of the ferrous sulphide particles are also carried into the boiler tubes and give rise to tube slagging. The present invention relates to a treatment of the coal with certain compounds so that when the coal is being burned chlorine is continuously liberated and decomposes the iron sulphide below its fusing point of 2140° F. and forms stable oxides, such as ferric oxide and sulfur dioxide, the former passing to the ash pit and the latter to the stack."

Appellant's specification contains the following statement: "Speaking in general terms, the chemicals used may be said to comprise a suitable deliquescent halogen compound, such, for instance, as calcium chloride or magnesium chloride or mixtures of the two, together with a suitable catalytic agent, such as manganese dioxide, iron oxide, chromium oxide, used either singly or two or more of them together, give most satisfactory results."

Under the heading "Catalysts" appellant's specification states:

"Manganese dioxide ($MnO_2$) and chromium oxide are employed for conversion of the hydrochloric acid into chlorine. Although, with respect to the formation of chlorine from hydrochloric acid, manganese dioxide and chromium oxide perform as catalytic agents, it has been found that when manganese dioxide and chromium oxide are used together the catalytic conversion of hydrochloric acid into chlorine is accelerated by some six or more times the activity of either one used alone.

"The chromium oxide functions as a promoter catalytic agent. Obviously by the use of the terms 'manganese dioxide' and 'chromium oxide' there will be included as coming within the same scope, chemical substances which when heated decompose to form manganese dioxide and chromium oxide, respectively, where such substances produce the effect of manganese dioxide and chromium oxide in the conversion of chlorine in the burning of the coal as previously described."

The patent to Nock relates to an improvement in desulphurizing coke, and discloses the use of chloride of sodium, peroxide of manganese, and rosin. The patent states:

"The quantities or proportions of the chemical agents employed by me in decarbonizing Pittsburg coal, and which I find to be productive of the most satisfactory results, are as follows: I dissolve in ten gallons of water three pints (dry measure)

of chloride of sodium, or common salt. To this solution I add half a pound (avoirdupois weight) of peroxide of manganese and two ounces (avoirdupois) of colophony, or common rosin, pulverized. This quantity of my mixture is sufficient for an oven containing one hundred and fifty bushels of Pittsburg coal, which contains, however, not so large a quantity of sulphur as many other varieties of bituminous or stone coal. The quantity of this mixture requisite for a given quantity of coke will vary with the proportion of sulphur in the coal undergoing the carbonizing process, and therefore cannot be exactly specified; but a workman of ordinary capacity can readily tell the proper quantity to use. So, also, the relative proportion of the ingredients of my mixture may admit of variation without impairing seriously its efficiency; and I do not desire to confine myself to the exact proportions of ingredients used, nor to the use of the precise chemical agents hereinbefore named. In place of chloride of sodium, *some other alkaline chloride may be substituted, or the chlorides of the alkaline earths—as salts of lime,* for instance. In lieu of the peroxide of manganese, some other substance which yields oxygen at an elevated temperature in contact with carbon—such as nitrate of potash, for instance—may be employed, and instead of rosin some other easily-combustible substance, as a modification of my process; but I have stated the ingredients and their proportions which I have found on experiment to be the most efficient in producing the desired result." (Italics ours.)

The patent to Livingstone relates to the treatment of coal. The substances used in the composition for such treatment are chloride of sodium, peroxide of hydrogen, and dioxide of manganese. These are mixed together and form a powder.

The patent to Foxwell relates to a compound for treating sulphur bearing fuel and other substances. The patent states: "In carrying out the invention, the fuel is treated with a water solution of calcium chloride and an oxygen-bearing compound of boron with the chlorin and boron compounds in such proportions as will establish a molecular balance between these two elements, as hereinafter more fully described. Among the characteristics of fuel treated by such a solution may be mentioned the following: The fuel burns as freely and easily as the best coal, notwithstanding the fuel may be rich in sulfur, and give off as many calories of heat and evaporate as much water. The products of combustion are rendered substantially inert and thus will not attack iron or steel surfaces of the furnace or heat-absorbing elements of a boiler in connection with which the fuel is used. * * * "

The publication of Mellor, "Treatise of Inorganic Chem.," vol. 2, pp. 25–35, shows that it is standard laboratory procedure to oxidize hydrochloric acid or a chloride salt with oxidizing agents such as manganese dioxide and others to produce free chlorine gas.

The patent to Esselen et al. is directed toward giving coal a distinctive appearance by imparting thereto a distinctive color. It points out that tannic acid may be added to the pigment employed to act as a binder.

The patent to Komarek relates to a coating for briquettes. It discloses the use of calcium chloride, manganese chloride, and potassium carbonate for that purpose, with a film forming material to act as a binder.

The Board of Appeals did not discuss any of the other references, and we do not find it necessary to do so.

Appellant introduced into the record a number of affidavits showing commercial success of his composition and method of treatment of coal, and also affidavits of chemists to the effect that appellant's alleged invention is novel and that the results secured by him in the treatment of coal could not be secured by following the teachings of the references.

The Examiner allowed nine claims and rejected all the others, including those before us. The Board reversed the Examiner upon his rejection of eight claims, and they stand allowed, in addition to those allowed by the Examiner.

It appears that the Examiner allowed claims where specific constituent elements of the composition were specified, and disallowed claims where the broad terms "catalyst" or "catalyzing agent" were used. The Board allowed claims rejected by the Examiner where the claims specified that more than one catalyzing agent was employed. The Board affirmed the rejection of claims where they did not specify that the composition was for the treatment of coal, and where they did not specifically provide for the employment of more than one catalyst, holding that all such claims lacked invention in view of the references, and that such

claims were so broad as to read upon the prior art.

Claim 40, and claims 42 to 45, inclusive, will be considered together. The distinction between these claims and certain of the allowed claims is that not more than one catalyst is specified in the rejected claims. It is appellant's contention that, while the prior art disclosed the use of sodium chloride and a substance which acted as a catalyst, such a composition could not secure the result accomplished by appellant's composition, for the reason that sodium chloride decomposes at a temperature above the fusion point of iron sulphide, and hence there could not be provided a continuous supply of chlorine to effect decomposition of the iron sulphur compounds. An affidavit by a chemist, Hoffman, which is in the record, is to that effect, and we accept it as correct. We therefore are of the opinion that, in so far as the prior art taught the use of sodium chloride in a composition for the treatment of coal, such teaching may not be resorted to as a ground of rejection of the claims under consideration, which do not include sodium chloride.

However, the patent to Nock expressly states that chlorides of the alkaline earths, as salts of lime, may be substituted for sodium chloride. Therefore we have the express teaching that calcium chloride may be employed as appellant employs it. Nock also teaches the use of peroxide of manganese or potassium nitrate for the same purpose as appellant has in the use of manganese oxide, which, appellant says, operates as a catalyst. Nock uses rosin as a binder, whereas appellant uses tannic acid.

The group of claims now under consideration do not include the binder.

We have hereinbefore observed that this group of claims do not specifically include more than one catalyst, and in our opinion they are directly anticipated by Nock. It is true that each of these claims has the "whereby" clause stating the result secured by the composition, but we do not think that such clause may be resorted to for the purpose of adding positive elements to the claim. It is the contention of appellant, as set forth in the affidavit of Hoffman, that the Nock disclosure using calcium chloride is inoperative to provide a continuous supply of chlorine during the burning of the coal, but we do not think this contention may be sustained, for two reasons: (1) Because appellant's specification teaches that a single catalyst, such as manganese dioxide, may be used with the calcium chloride; and (2) because, if the Nock composition is inoperative, and the claims here under consideration are so broad as to read upon Nock, the said claims would also be faulty for the same reason.

■ Furthermore, as well stated by the examiner, " * * * it is elementary that the claims must distinguish from the references even if they are inoperative."

■ We find no error in the rejection by the Board of Appeals of claims 40, and 42 to 45, inclusive.

Claim 41 is a method claim and embraces the treatment of coal with a composition containing a deliquescent chloride together with a substance containing chromium oxide and tannic acid. The specification discloses that the tannic acid is used as a fixer or binder of the remaining elements of the composition. It does not disclose that any chemical reaction takes place between such elements and the tannic acid. As hereinbefore stated, the patent to Esselen et al. discloses the use of tannic acid as a binder of pigments, to be placed upon coal, and we are of the opinion that, in view of such disclosure, claim 41 was properly rejected by the Board of Appeals.

The remaining claims before us are claims for a composition of matter. Claims 34 and 35 are very similar to a number of claims allowed by the Patent Office tribunals, the chief difference being that the allowed claims recite that the composition of matter is for the treatment of coal, or are for coal, as an article of commerce, which coal has been treated with the designated composition of matter. Each of said claims 34 and 35 embraces the elements of a chloride which upon heating decomposes below the fusion temperature of iron sulphide, and more than one oxidizing agent, which agents function as catalysts.

Apparently the only reason why these claims were not allowed by the Patent Office tribunals was that they are not limited to the treatment of coal. The Board of Appeals in its decision stated:

"The examiner has allowed a number of claims along the line of claim 29, which is drawn to cover a composition of matter for the *treatment of coal* comprising a chloride, which upon heating, decomposes below the fusion temperature of iron sulphide, together with manganese oxide and a sub-

stance containing chromium oxide. He has refused claims, such as claims 34 and 35, which are merely drawn to cover *composition of matter* in general, and which comprises a similar chloride as claim 29 and, in addition, an inorganic oxidizing agent and an oxidation catalyst. Such a claim is broad and more or less indefinite in its scope and does not limit the composition to any use where these ingredients will co-operate to produce some particular result. For such broad claims we believe that the art is sufficient to render them unpatentable, particularly Nock and Livingstone." (Italics quoted.)

We cannot agree with the Board that these claims are unpatentable over the prior art. The Board itself has held that the prior art does not teach the use of more than one catalytic agent, and has allowed claims specifying the use of more than one catalytic agent upon the ground that appellant's specification discloses that a mixture of two oxidation catalysts, as specified, "gives as much as six times the effect that any single one of the oxidizing catalysts [gives]." It will be observed that each of claims 34 and 35 embraces more than one catalytic agent. By the term "inorganic oxidizing agent" we understand that it is intended to mean an agent having catalytic properties.

We think that, if these claims had been limited to a composition for the treatment of coal, they would have been allowed, and properly so. The question then arises whether appellant is entitled to any broader protection of his invention than for the treatment of coal. Without expressing any opinion as to whether, if allowed, these claims would be valid if applied to an art remote from the treatment of coal, we think that appellant should not be required to limit his claims to the treatment of coal. It is well known that peat, when processed, is used as fuel, and that it ordinarily contains sulphur; the same is true of lignite, although it may be classified as a species of coal. We think appellant is entitled at least to protection in the use of his patentable composition for the treatment of such and similar fuels if it is adapted thereto. It is our opinion that claims 34 and 35 should be allowed.

Claim 36 is for a composition of matter "comprising a deliquescent chloride, potassium dichromate and tannic acid." With respect to the use of tannic acid in conjunction with potassium dichromate, appellant's specification states:

"In order to affix the calcium chloride and the manganese dioxide and the potassium dichromate to the coal sufficiently well to insure its retention against rain and snow, I add as a fixative, tannic acid ($C_{14}H_{10}O_9$). I have found that instead of supplying the chromium oxide directly, that when potassium dichromate is substituted, the fixative step is brought into play. This is due to the fact that the potassium dichromate and tannic acid react upon one another in the presence of moisture and produce an insoluble flocculent tanninbichromate precipitate which affixes the whole to the coal and secondly, that under heat at the proper temperature, the tanninbichromate is oxidized producing the chromium oxide required as a catalyst, as before described."

We do not find this asserted chemical reaction between potassium dichromate and tannic acid anywhere disclosed in the prior art, and, assuming that appellant's composition with a single catalyst is operative, as he states in his specification, we think that the claimed reaction between the tannic acid and the potassium dichromate, serving the double purpose of a binder and producing chromium oxide, renders claim 36 patentable and it should be allowed.

Claim 37 is merely for a composition of matter for the treatment of coal, comprising calcium chloride and materials which form a protective coating for the chloride when the same is coated upon the coal. This claim is clearly unpatentable over Nock in view of Esselen et al., or over Komarek alone.

Claim 55 does not specifically embrace more than one catalyst and provides for a binder in general terms. It is clearly met by Nock in view of either Esselen et al. or Komarek.

For the reasons stated herein, the decision of the Board of Appeals is reversed as to claims 34, 35, and 36, and in all other respects is affirmed.