41 C.C.P.A. (Patents)

**Application of HOLLINGSWORTH.**

**Patent Appeal No. 5997.**

United States Court of Customs and Patent Appeals.

Feb. 3, 1954.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City (C. M. Fisher, Washington, D. C., and M. W. Sage, New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY and COLE, Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner in rejecting, as unpatentable over the prior art, all of the claims, Nos. 3, 4, 6, 9, and 14, in appellant's application for a patent for an alleged invention relating to "Defluorination of Phosphate Rock."

Claim 3 is sufficiently illustrative of the appealed claims. It reads:

"3. In the method of defluorinating a phosphate rock in which the rock is subjected to a two-stage calcination in the presence of water vapor with a first stage temperature of 2000 to 2600° F. and a second stage temperature of at least 2600° F. but not too high to fuse the charge, the improvement which comprises grinding the calcine resulting from the first stage of calcination and chemically adjusting the $P_2O_5$, CaO and $SiO_2$ contents thereof prior to the second stage of calcination to provide in the final calcine from 9.5 to 12% $SiO_2$ and three mols of CaO for each mol of $P_2O_5$ and 2 to 2.2 mols of CaO for each mol of $SiO_2$ and thereby producing a phosphate product having high fertilizer availability and containing less than one part of fluorine for each 40 parts of phosphorus."

The alleged invention, as set out in appellant's specification, is described as follows:

" * * * the invention involves a two stage heat-treatment or calcination in which natural fluorapatite is subjected to two successive heat-treatments in the presence of water vapor. In the first stage conducted at a temperature between 2000 and 2600°F., a substantial amount of fluorine is removed from the phosphate material without materially improving its availability as a fertilizer. In the second stage, conducted at a temperature in excess of 2500°F. and preferably of at least 2600°F. and with the first calcine chemically adjusted or balanced to provide a second calcine containing from 8.5 to 14% silica and three mols of CaO for each mol of $P_2O_5$ and about two mols of CaO for each mol of $SiO_2$, the remaining fluorine is removed from the phosphate material and its fertilizer availability is raised to a high value.

The chemical adjustment to provide the contemplated ratios of $P_2O_5$-CaO-$SiO_2$ in the second calcine is effected by the addition to and admixture with the rock of lime (or lime-containing substance) or silica or both. Such additions to the rock may be made prior to the first stage of heat-treatment, between the two stages, or as a divided operation in which part of the contemplated chemical balancing is achieved prior to each stage. During the second stage heat-treatment the defluorination, partially carried out in the first stage, is substantially completed, and the product rendered suitable for use not only as a mineral supplement for animal feed mixtures, but also as a highly available phosphate fertilizer."

The references relied on are:

| Meriwether | 1,058,249 | April 8, 1913. |
| Tromel | 2,070,697 | February 16, 1937. |
| Tromel | 2,093,176 | September 14, 1937. |
| Great Britain | 418,788 | October 31, 1934. |
| Great Britain | 463,849 | April 7, 1937. |

The patent to Meriwether recites a process of heat-treating phosphate rock with lime or alkali metal salts to produce a fertilizer, and further discloses that a more complete conversion is effected when the lime is added in two stages with a calcination and pulverizing operation before the addition of the second half of the lime and recalcination.

The Tromel patents disclose defluorination processes in which there is an adjustment of the CaO-$P_2O_5$-$SiO_2$ content of the rock in its natural state, the material then being subjected to calcination at high temperatures in the presence of steam. The Tromel patent No. 2,093,176 also recites a two-stage heat operation, the first stage being conducted at temperatures between 1000°C. and 1200°C., and the second stage at temperatures between 1300°C. and 1450°C. The patentee further states that better results are obtained with a greater degree of fineness of the grinding of the charge.

The British patent 463,849 recites an improvement on the process disclosed in the earlier patent, No. 418,788, whereby a two-stage calcination operation is conducted during the first stage at temperatures exceeding 1300°C. and the second stage at temperatures exceeding 1300°C. and as high as 1480°C.

The Primary Examiner rejected all of the claims as unpatentable over either Tromel 2,093,176 or Great Britain 463,849, in view of Meriwether, in that the calcination techniques cited are within the skill of the art. He held further that the patent to Tromel, No. 2,070,697, clearly discloses that the adjustment of the CaO.$P_2O_5$.$SiO_2$ ratio of the phosphate charge to approximately 5CaO.$P_2O_5$.$SiO_2$ in conjunction with a two-stage calcination of that charge in the presence of steam is not novel nor of patentable concept; that grinding between calcination stages is shown in the patent to Meriwether; and that the adjustment of the phosphate charge between the first and second stage of calcination is seemingly not critical inasmuch as the same result is obtained by making the adjustment in the first stage, as shown by the references.

Counsel for appellant argues that an essential feature of the appealed claims is the chemical balancing of the charge and the two-stage calcination operation, and that chemical balancing alone with one stage of calcination would result in fusion of said charge with incomplete elimination of the fluorine content therein.

As hereinbefore pointed out, the patent to Meriwether clearly recites the two-stage calcination with grinding between the stages, and the British patent, No. 463,849, states:

"* * * The first stage [calcination] is preferably kept below the softening temperature and is maintained until about 50% of the outer portions of the phosphatic grains are disintegrated whereby the eutectic composition of these layers is surpassed and the risk of adherence when proceeding to higher temperatures is avoided. The subsequent stage or stages may then be effected at the optimum temperature of disintegration so as to avoid adherence."

Counsel for appellant further argue that invention is present over the cited references in that the final product of appellant's process will have high fertilizer availability and such a low fluorine content that it may be used as a mineral supplement for animal feed. That final product, it is stated, results from subjecting the phosphate rock, in the primary stage, to calcination in the presence of steam at temperatures between 2000 and 2600°F. That calcined product is then ground and a chemical adjustment is made in the $P_2O_5$, $CaO$, $SiO_2$ contents thereof. It is then subjected to the second stage of calcination in the presence of steam at temperatures in excess of 2500°F. and preferably in excess of 2600°F., thus providing in the final calcine from 8.5% to 14%, and preferably from 9.5% to 12%, of $SiO_2$, and 3 mols of CaO for each mol of $P_2O_5$, and 2 to 2.2 mols of CaO for each mol of $SiO_2$.

That argument was answered by the board in the following language:

"It seems to be contended in the brief that the cited art is not applicable to the claims because it does not disclose the chemical adjustment to provide from 9.5 to 12% of $SiO_2$ and three mols of CaO for each mol of $P_2O_5$ and 2 to 2.2 mols of CaO for each mol of $SiO_2$ before the commencement of the second calcining step. The claims however do not specify the chemical adjustment to attain these proportions at the commencement of the second calcining step but instead the adjustment to attain these proportions 'in the final calcine' which is defined in the application as 'the product of the second stage heat-treatment.' The $SiO_2$ in the final product, $5CaO$, $P_2O_5$, $SiO_2$, disclosed in the Tromel patent relied on by the Primary Examiner figures to be slightly over 12½% from which the 8.5 to 14% recited in claims 4, 6, 9 and 14, does not patentably differentiate nor does the 9.-5 to 12% recited in claim 3. Appellant contends that the claims distinguish from the Tromel disclosure because the latter suggests * * * that an amount of 15% of sand is sufficient as addition to phosphate rock which has a natural content of 7% to 8% of silicic acid. It does not follow from this statement by the patentee that the final product or 'final calcine' as recited in the claims on appeal cannot have the proportions recited in these claims and, as indicated above, the final product or final calcine * * * of the Tromel patent actually has the claimed proportions."

■ We find nothing in the record or brief of appellant which would in anywise require a reversal of the holding of the board in the above respects.

■ The other reasons of appeal have been considered but, with one exception, it is not deemed necessary to discuss them. The single exception is the contention of appellant that the first Tromel patent is inoperative. We believe that contention is properly answer-

ed in the brief of the Solicitor for the Patent Office that claims which do not distinguish from a disclosure alleged to be inoperative cannot be allowed, citing In re Crecelius, 86 F.2d 399, 24 C.C.P.A., Patents, 718. It is also pointed out that the disclosure of a patent may not be ignored merely on the ground that the process is not commercially successful and that "Inoperativeness in a patentable sense is not established by mere lack of commercial success," citing Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L. Ed. 112; In re Lawson, 36 F.2d 525, 17 C.C.P.A., Patents, 743, and Williams v. Handschiegl, 48 F.2d 395, 18 C.C.P.A., Patents, 1176.

We are of the opinion that the appealed claims define nothing inventive over that disclosed in the references of record and that what appellant has done here lies within the realm of those skilled in the art rather than in the inventive field.

The decision of the Board of Appeals is affirmed.

Affirmed.