**820**

Lewis A. SIEGEL, Plaintiff,

v.

Robert C. WATSON, Commissioner of
Patents, Defendant.

Civ. A. 2969-54.

United States District Court
District of Columbia.

Nov. 26, 1957.

---

Lewis A. Siegel—pro se, for plaintiff.

Clarence W. Moore, Solicitor, U. S. Patent Office Washington, D. C., Arthur H. Behrens, Washington, D. C., of counsel, for defendant.

CURRAN, District Judge.

This is a civil action brought by the plaintiff, Lewis A. Siegel, pursuant to 35 U.S.C. § 145 to authorize the defendant, Robert C. Watson, Commissioner of Patents, to issue to plaintiff Letters Patent containing claims 1, 7, 21, 43, 44, 45, 46, 49, 50, 51, 53, 55, 56, 58, 59, 67 and 68 of plaintiff's application Serial No. 153,430, entitled "Vibration Variation Control", filed April 1, 1950.

These claims were rejected on one or both of two grounds, (1) as being unpatentable over the prior art, or (2) as being functional and indefinite or as otherwise failing to point out plaintiff's invention with the particularity required by 35 U.S.C. § 112, or its predecessor, Revised Statutes, Section 4888.

The application relates to a method and apparatus for cutting, grinding, lapping or polishing diamonds or other substances having a grain structure. The diamond to be cut is presented to a rotating

cutting disc in a certain direction relative to the "cutting grain" of the diamond in order that the diamond may be cut. Defendant concedes that when the diamond is being ground in this direction a different character of vibration is produced than when the diamond is being presented to the grinding means at some other angle. Plaintiff uses this difference to align the diamond in a cutting direction relative to the cutting disc and to keep the diamond and the cutting disc in this relationship.

This is accomplished in plaintiff's apparatus by connecting a microphone to the diamond holding means and causing a current to flow through the microphone. The current will vary in amount with the degree of vibration, increasing when the diamond is being cut on the grain and decreasing when the diamond is being ground at an angle to the grain. This current is passed through an ammeter, which shows the amount of current flowing. The needle of the ammeter is the means for opening or closing an electric power circuit which may, according to plaintiff's application (1) drive an electric motor which rotates the diamond holder, (2) actuate a solenoid latch to cause the diamond to be lifted out of engagement with a cutting disc, or (3) drive an electric motor which causes the rotating cutting disc to move in a planetary path around the diamond being cut while maintaining cutting contact with it.

Defendant contends that the basic shortcoming of the claims is a failure to properly define the invention. This failure, according to the defendant, resulted in certain claims reading on the prior art or constituting themselves a basis for rejection. Other claims were allowed by the Examiner and the defendant concedes that the plaintiff's apparatus and process were regarded as patentable inventions, but contends that this circumstance does not confer on the plaintiff the privilege of claiming these inventions in such broad terms as to cover other known devices, or in such functional or indefinite terms as to cover the *results* achieved by plaintiff's devices in place of the *actual means* for obtaining these results. (Emphasis supplied).

Many of the rejections of the claims involve the question of whether a functional expression in the claim furnishes a patentable distinction over the prior art or distinctly points out and claims the novel features of plaintiff's device, as required by 35 U.S.C. § 112.

This Section is as follows:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. July 19, 1952, c. 950, § 1, 66 Stat. 798."

Plaintiff takes the position that the last paragraph of the aforementioned Section sanctions the use in the claims of functional expressions of general results as distinctions over the prior art, or as adequate descriptions of the essential elements. If plaintiff's contention is correct it would mean that under the language of the last paragraph of 35 U. S.C. § 112, it would be proper to look to purely functional limitations expressed in the claims for novelty to support patentability. This principle was rejected

in In re Arbeit, 206 F.2d 947, 958, 41 C.C.P.A., Patents, 719. The Court, in respect to the third paragraph of Section 112, said:

" * * * It seems obvious to us that a construction of that paragraph, such as appellant contends for, would render it wholly inconsistent with the first and second paragraphs which, like former R.S. § 4888, are explicit and *mandatory* in requiring a written discription expressed in 'full, clear, concise and exact terms' *in the specification,* and so set forth *in the claims.* * * * *"

■ It follows that all three paragraphs of 35 U.S.C. § 112 must be read and construed together.

■ Claim 46 calls for "a vibration indicating tong for diamond cutting." The Patent Office rejected this claim as being functional and indefinite. This claim describes no specific structure or means for accomplishing the indicating function. It, therefore, follows that the principle enunciated in In re Gardner, 32 App.D.C. 249, is applicable. There the Court stated:

"It is well-settled law that a patent cannot issue for a result sought to be accomplished by the inventor of a machine, but only for the mechanical means or instrumentalities by which that result is to be obtained. One cannot describe a machine which will perform a certain function, and then claim the function itself, and all other machines that may be invented by others to perform the same function."

I therefore hold that claim 46 is functional and indefinite.

In claim 51 the final means recited is "means responsive to the vibrations of said diamond for controling (sic) the position of the cutting disc on its planitary (sic) axis." This claim does not definitely describe the desired function for the control means. Claim 51 merely states a result as far as the control of the position of cutting a diamond is concerned. I therefore hold that claim 51 is indefinite.

■ Claim 58 reads as follows: "Remote observation, remote control of diamond cutting;" and claim 68 reads: "A process utilizing variation of vibration caused by diamond against abrasive means to actuate automatic controling (sic) devices." These two claims do not point out the plaintiff's invention with the particularity required by 35 U.S.C. § 112. As pointed out above, the third paragraph of Section 112 must be read together with the second paragraph of Section 112. This Section provides no basis for defining an invention in terms of the general result which the inventor seeks to accomplish. I hold therefore that Claims 58 and 68 fail to point out plaintiff's invention with sufficient particularity so as to meet the requirements of 35 U.S.C. § 112.

■ Claim 1 is directed to a combination of a "vibration indicator connected to a diamond holding means." This combination is not restricted to any particular utility and there is no requirement that it function in any particular manner in relation to the other elements.

The patent to Plimmer No. 1,891,777, granted December 20, 1932 shows a grinding machine with a means for stopping the travel, or feed, of a grinding wheel toward a work piece when this work piece has been reduced to a predetermined size. The device for stopping the feed is a diamond mounted on an armature which moves in a generator which generates a current flowing through a current flow meter. The contact of the diamond with the grinding wheel causes oscillatory vibration, which causes the generation of a current measured by the current flow meter. Claim 1 reads on the Plimmer generator armature which holds a diamond connected with a current flow meter which indicates oscillatory vibration. The language of a claim must differentiate inventively over the prior art. The reference to a "diamond holding means" in claim 1 does not limit the claim to an apparatus for grind-

ing diamonds. It follows therefore that claim 1 is unpatentable, over the patent to Plimmer.

Claim 7 reads as follows: "A vibration controlled dop holder having automatically acting dop rotating means adapted to rotate the dop to the cutting grain position of the diamond in said dop relative to said cutting disc." This claim calls for a dop holder and an "automatically acting" means for rotating this dop holder. Furthermore the dop holder is "vibration controlled."

The patent to Coleman No. 1,168,858, granted January 8, 1916, shows a diamond set in a dop head, a diamond holding head, which has a vertical main shaft which is driven through worm gearing by an electric motor. The rotation of the dop being an electric motor, the dop rotating means is "automatically acting." Coleman discloses that the cutting grain of the diamond being rotated may be determined by the differences in sound produced.

Claim 7 does not recite, or point to, any structure which would give any vibration control and therefore the phrase "vibration control" imports no patentable distinction over Coleman's device. The plaintiff attempts to distinguish between "sound" and "vibration." The Board in its decision on reconsideration pointed out that it is common knowledge that sound and vibration are correlated. Kimball, in his work on "College Physics", copyrighted November 1923, stated: "All sources of sound are vibrating bodies capable of setting up air vibrations." It follows that claim 7 is unpatentable over the patent to Coleman.

Claims 21, 43, 49 and 50 were rejected by the Patent Office as being unpatentable over Coleman in view of Plimmer. Insofar as these claims are concerned the limitations relied upon by the plaintiff to avoid the references are functional recitations of what plaintiff's device does rather than what it is. Plaintiff's position is that there is no reference which meets the underlying concept of his invention and the Patent Office is not justified in combining references to build up

an anticipation. The statement in Coleman that the grain of a diamond may be determined by "differences in sound produced" would suggest to those skilled in the art that a vibration responsive means disclosed by Plimmer could be substituted for the friction responsive means disclosed by Coleman without invention. It follows therefore that claims 21, 43, 49 and 50 are unpatentable over Coleman in view of Plimmer.

Claim 53 reads as follows: "In combining a cutting tool vibration responsive means responsive to vibrations of work piece subject to said cutting tool for controling (sic) said cutting tool with respect to said work piece." In the patent to Bailey, No. 2,340,843, granted February 1, 1944, the crystals being ground are the work pieces and the vibrations of these crystals control the cutting tool with respect to the work pieces. I therefore hold that claim 53 is unpatentable over the patent to Bailey.

Claim 56 calls for a "process of removing a work piece having a grain structure from a grinding tool." The vibrations of the work piece are measured by instrumentation and when the vibrations diminish the work piece is removed. The patent to Bailey, supra, discloses the removal of a piezo-electric crystal from contact with a grinding tool, when vibrations of a certain frequency are obtained. Thus Bailey taught that the character of the vibrations could be used as a guide for determining the progress of the grinding. The fact that the work piece is removed whenever the vibrations indicate that the desired object has been obtained is not invention. I therefore hold that claim 56 is unpatentable over the patent of Bailey.

Claims 44, 45, 55, 59 and 67 are drawn to a method of grinding diamonds in which certain characteristic vibrations are used in determining the proper position of the diamond in relation to the grinding disc in order that the grinding will be along the grain of the diamond. The Patent Office rejected these claims as unpatentable over the publication "Diamond and Gem Stone Industrial Pro-

duction" by Paul Grodzinski, N.A.G. Press Ltd., London 1942. The Patent Office took the position that the publication discloses that it was old in the art to orient a diamond according to sound characteristics in order to grind along the grain. Plaintiff's position is that the publication does not teach that it is old to position a diamond relative to a tool by means of the characteristic sound emitted by contact between the tool and the diamond. The publication states: "* * * The real cutting of the stone is observed by a special sound. If this is not present the cutter knows that the stone 'does not run'." From this it seems clear that a person skilled in the art will change the position of the diamond to the stone until the characteristic sound indicating efficient cutting is heard. In the prior art the grain of the diamond was determined by a "special sound." "Sound" and "vibration" being coordinated terms, it follows that the only distinctions between plaintiff's process and the process disclosed in the publication are contained in such expressions as "ascertaining", "measuring" and "indicating by instrumentation." A statement that a device is operated automatically rather than manually is not a statement of invention. It follows therefore that claims 44, 45, 55, 59 and 67 are unpatentable over the aforementioned publication.

This is a most difficult case which involves intricate and technical questions. "The Patent Office has the equipment for deciding intricate and technical questions * * *." Robertson v. Cooper, 4 Cir., 46 F.2d 766, 768.

In Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 157, 229 F.2d 37, 40, the Court said:

"In patent * * * cases * * * a finding of fact by the Patent Office as to priority of invention * * * must be accepted as controlling, unless the contrary is established by evidence 'which, in character and amount carries thorough conviction.' Morgan v. Daniels, 1894, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657;

Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 973; Century Distilling Co. v. Continental Distilling Co., 3 Cir., 1939, 106 F.2d 486, 489; Safeway Stores v. Dunnell, 9 Cir., 1949, 172 F.2d 649, 652–653."

In Morgan v. Daniels, supra, the Supreme Court held that "a mere preponderance of the evidence" is not enough to justify reversing the Patent Office and deciding that an applicant is entitled to a patent. In Robertson v. Cooper, supra, the Court said "While the judgment of the Patent Office officials is not absolutely binding on the courts, it is entitled to great weight, and is to be overcome by clear proof of mistake."

■ There is a presumption that the Patent Office is right and I find in this case that the evidence submitted by the plaintiff has not overcome the presumption "by clear proof of mistake." I therefore find for the defendant.

The findings of fact and conclusions of law being contained in this opinion, no formal findings and conclusions are necessary. Counsel for the defendant will prepare the proper judgment not inconsistent with this opinion.