Lewis A. SIEGEL, Appellant,

v.

Robert C. WATSON, Commissioner of Patents, Appellee.

No. 14417.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 16, 1959.

Decided April 9, 1959.

Petition for Rehearing Denied July 14, 1959.

Burger, Circuit Judge, dissented.

Mr. Lewis A. Siegel, appellant, pro se.

Mr. Arthur H. Behrens, Attorney, United States Patent Office, with whom Mr. Clarence W. Moore, Solicitor, was on the brief, for appellee.

Before Mr. Justice BURTON, retired,[*] and FAHY and BURGER, Circuit Judges.

FAHY, Circuit Judge.

This appeal is from a judgment of our District Court dismissing a complaint under 35 U.S.C. § 145 (1952) praying the court to authorize the Commissioner of Patents to issue a patent to appellant. The District Court stated its reasons in an opinion reported at 156 F.Supp. 820.

On April 1, 1950, appellant applied for a patent on an invention entitled "Vibration Variation Control," Serial No. 153,-430. The Examiner allowed fourteen claims and rejected seventeen. His decision was affirmed by the Patent Office Board of Appeals. The claims rejected, with the exception of three which have been abandoned, then became the subject of this litigation.

In his brief appellant describes his invention as follows:

"The Siegel invention here involved relates to a method and apparatus for cutting, grinding, lapping or polishing diamonds. The diamond to be cut is presented to a rotating diamond cutting disc in a certain direction relative to the 'cutting grain' of the diamond in order that the diamond may be cut. When the diamond is being ground in this direction, a different vibration is produced than when the diamond is presented to the grinding means at some other angle. This difference is used to align the diamond in a cutting direction relative to the diamond cutting disc and to keep the diamond and the diamond cutting disc in this relationship.

"This is accomplished by connecting a microphone (transducer) to the diamond holding means and causing a current to flow through the microphone. The current will vary in amount with the degree of vibration of said diamond holding means. This current is passed through an ammeter, which shows the amount of current flowing. The needle of the ammeter is the means for opening or closing an electric power circuit which may: (1) drive an electric motor which rotates the diamond holder (Dop); (2) actuate a solenoid latch to cause the diamond to be lifted out of engagement with said diamond cutting disc; or (3) drive an electric motor which causes the rotating diamond cutting disc to move in a planetary path around the diamond being cut while maintaining cutting contact with said diamond."

In rejecting the claims the Examiner relied on one or both of two grounds: (1) unpatentable over the prior art, or (2) functional and indefinite.[1]

The prior art consists of both patents and publications: Bailey, No. 2,340,843, relating to the manufacture of piezoelectric bodies or crystals to a desired natural resonance in the crystals;[2] Plim-

[*] Sitting by designation pursuant to Sec. 294(a), Title 28, U.S.Code.

1. By the use of "indefinite" we assume, and the brief of the Patent Office so suggests, that the Examiner was referring to 35 U.S.C. § 112 (1952) which states in part: "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

2. The inventor claimed "the method of manufacturing a piezo-electric crystal having a predetermined response frequency, which comprises the steps of moving a piezo-electric crystal blank in contact with and relative to a reducing means, amplifying the piezo-electric current generated by said motion, measuring the frequency of said piezo-electric current during the continuation of said motion, and interrupting the reducing opera-

mer, No. 1,891,777, relating to improvements in machine tools and especially in grinding machines and a feed control mechanism;[3] Coleman, No. 1,168,858, relating "to the art of polishing diamonds" and "more particularly to locating the grain of the diamond." Coleman includes means for noticing the differences in physical effects produced when a diamond is rotated perpendicular to a movable friction surface with which the diamond is held in contact. The patent states "as examples of the different physical effects which may be utilized or taken advantage of to ascertain the grain of a diamond may be mentioned * * * differences in sound produced." Jearum, No. 2,386,687, also a part of the prior art, relates "to the grinding, lapping, cutting or polishing upon a * * * rotary disc * * * of diamonds. * * *" It shows a diamond grinder with a rotary cutting disc which travels in a planetary orbit. This travel is such, according to the patentee, that grinding occurs along the grain of the diamond at least twice in each rotation of the cutting disc about its planetary axis. The publication relied upon was Grodzinski's Diamond and Gem Stone Industrial Production (1942) where at p. 90 the author states:

> "After a certain amount of grinding when the stone has lost its original form, it is nearly impossible to find the grain by control and observation alone. In these cases a trial method has to be applied by changing the position of the stone toward the wheel; this is easily effected in the usual equipment by bending the copper stalk or other adjusting devices. The real cutting of the stone is observed by a special

sound. If this is not present the cutter knows that the stone 'does not run.'"

Both the Board of Appeals, in affirming the decision of the Examiner, and the District Court, in its opinion dismissing the complaint, gave analyses of each disallowed claim in terms of comparison with the prior art. Our review has disclosed no basis for reversal, and we think it unnecessary to restate in our own language conclusions already formulated in the previous stages of the case. We do discuss, however, several contentions of appellant having a legal flavor.

■ Appellant believes that when reading the claims one must incorporate the specification in determining whether or not to grant the patent. He relies upon the third paragraph of 35 U.S.C. § 112 (1952).[4] Appellee counters, and we agree, that the claims of an application are the correct measure; limitations not expressed in the claims, though disclosed in the specifications, are not read into the claims. Montgomery Ward & Co. v. Coe, 78 U.S.App.D.C. 224, 139 F.2d 17; Application of Lundberg, 1957, 244 F.2d 543, 548, 44 CCPA 909, 916, where it is said:

> "[A]ppellants' intended construction of [the third paragraph of § 112] would eliminate the distinction between a combination claim whose elements are recited broadly as means for performing a specified function and a combination claim in which the same elements are recited in detail, for, so they would contend, the tribunals of the Patent Office must consider the means

tion when the frequency of said * * * current becomes substantially equal to said predetermined frequency."

3. An object of this invention, so states the patent, "is the provision of an improved electrical sizing device having particular reference to grinding machines and which will interrupt the feed between the grinding wheel and the work when the said wheel and work have approached one another a predetermined distance."

4. This paragraph reads: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, * * * or acts described in the specification and equivalents thereof."

clause as though it incorporated the corresponding structure described in the specification. * * * To so construe this language of the act would effectively eliminate the broad protection which is at present afforded inventors."

■ Another argument is that both Bailey, supra n. 2, and Plimmer, supra n. 3, are not designed for cutting diamonds. But as the Board of Appeals stated, "it is a prerequisite of patentability that the language of a claim must differentiate inventively from the prior art." Claim 1,[5] says the Board, and we agree, is so broad in its description that it does not satisfy this test. It is possible to read the claim so as not to restrict its significance to an apparatus for grinding diamonds. This would necessarily bring into the discussion of patentability other related patents, such as Bailey and Plimmer, notwithstanding they may be directed toward a different problem.

■ Appellant also suggests that Coleman is a "paper" patent incorporating vague prophecies never relied upon in subsequent inventions. We assume appellant thus attempts to discredit the reference by showing that it has made no impression upon the art. But a patent may have lain for years unnoticed and yet "it will be as effective to invalidate a new patent, as though it had entered into the very life blood of the industry." Western States Mach. Co. v. S. S. Hepworth Co., 2 Cir., 1945, 147 F.2d 345, 350, certiorari denied 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991. See, also, Application of Hollingsworth, 1954, 210 F.2d 290, 293, 41 CCPA 795, 798.

Appellant would also have us construe the reference to "sound" in Coleman so as not to suggest measurement of "vibration." But there is a close relation between sound and vibration. In Kimball's College Physics p. 198 (4th ed.

1929) it is said, "all sources of sound are vibrating bodies capable of setting up air vibrations." Moreover, both Coleman and Grodzinski's publication, supra, disclose that sound may be used as a guide to cut a diamond along its grain. Taking these three references[6] as a whole we think they do suggest the use of "vibration" as a guide for orientation of a diamond along its grain.

Appellant also contends that in the prior art the cutting grain was ascertained only by "trial and error," while this is not true of his method. In a sense, however, as appellee answers, appellant's method also operates by trial and error. The cutting is kept on the grain not by some prearranged method but by trial and error adjustment during the cutting. While the means utilized by appellant are related to differences in vibration when the cutting disc is on the grain rather than in contact with another part of the surface of the diamond, yet, as we have seen, there is a close relationship between this technique and the prior art use of difference in sound to enable the cutting disc to be brought back to the grain.

Appellant also urges that the District Court failed to give proper weight to evidence introduced for the first time at the trial and erred in taking the position that "there is a presumption that the Patent Office is right." A reading of the lower court's opinion assures us, however, that the court was not giving the decision of the Patent Board a degree of finality which made futile the additional evidence introduced by appellant but was deciding the case on the evidence as a whole.

Affirmed.

BURGER, Circuit Judge (dissenting).

I dissent because I cannot agree that "appellant's method also operates by trial and error." As to Claims 7, 21, 43, 51, 53 and 56, there is no more trial and error than in a standard thermostat

---

5. Claim 1 reads:
  "In combination a vibration indicator connected to a diamond holding means."

6. We include Kimball as a reference because his book was relied upon by the Board of Appeals.

device which "adjusts" to a temperature below a pre-arranged or pre-fixed point by reacting automatically. Appellant's claims above referred to do not involve *human* trial and error but *automatic* response or adjustment to differences in vibration.